**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **MEHRUNNISA SHERMOHMAD** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NUMBER: 05-6072** |
| **NEW YORK LIFE INSURANCE CO., ET AL.** | * | **SECTION "L" (2)** |

## ORDER & REASONS

Pending before the Court is the Defendant New York Life Insurance and Annuity Corporation's ("NYLIAC") Motion to Abstain or, Alternatively, to Stay (Rec. Doc. 7). For the following reasons, the motion is GRANTED.

**I. BACKGROUND**

The Plaintiff, Mehrunnisa Shermohmad, alleges that in December of 1993 she was approached by the Defendant Mersedeh Ebrahimi and Sayed Hashemian, both of whom were agents of NYLIAC. Ebrahimi and Hashemian allegedly advised the Plaintiff that she should purchase two whole life insurance policies. The first of these policies, No. 45088793, was purchased on December 28, 1993, and had a face value of one million dollars. The second policy, No. 45139958, was purchased on February 14, 1994, and also had a face value of one million dollars. The Plaintiff alleges that she was promised that after paying premiums on the whole life policies for four years, she would not have to pay any more premiums.

After approximately one year, the Plaintiff discovered that the promises made to her were not true. She wrote a letter to NYLIAC, and the company offered to rescind the whole life policies and refund all premiums. The Plaintiff alleges that she was advised by Ebrahimi not to take the refund because it would result in a large tax penalty. The Plaintiff subsequently let the

1993 policy lapse, but continued to pay for the 1994 policy.

The Plaintiff alleges that in 1997, she was again approached by Ebrahimi, who wanted to show her a new product, a variable universal life insurance policy on which she would only need to make payments for five years. The Plaintiff purchased two such policies from Ebrahimi, policy Nos. 63547260 and 63547104, with face values of one million dollars each.

The Plaintiff further alleges that in 1999, Ebrahimi informed her that the whole life policy she purchased in 1994 had to be reduced from one million dollars to $500,000 due to lack of sufficient funds. Ebrahimi later informed the Plaintiff that the policy had lapsed. The Plaintiff subsequently contacted NYLIAC and found out that the variable universal policies would not be completely paid for in five years.

On September 26, 2003, the Plaintiff brought suit in the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, against NYLIAC and Ebrahimi. The suit sought nullification of the whole life policies and variable life policies, as well as damages that resulted from Ebrahimi's alleged false promises and material misrepresentations. The Plaintiff filed a motion on January 6, 2006, seeking leave to amend the complaint to include additional theories of liability against NYLIAC and Ebrahimi. In addition, Shermohmad sought leave to add Hashemian as a defendant.

On November 23, 2005, the Plaintiff brought the present action against NYLIAC and Ebrahimi.[1] Her claims rests on several theories of liability, including Rackateer Influenced and Corrupt Organizations Act ("RICO") violations, unjust enrichment, breach of fiduciary duty, fraud, negligent misrepresentation, breach of contract, civil conspiracy, unfair trade practices,

---

[1] The Plaintiff also names Hashemian as a Defendant in the body of the claim, however he is not identified as such in the caption of the claim. At this time, the Plaintiff has not requested that a summons be issued for Hashemian.

and negligence.  Based on these theories, the Plaintiff seeks damages for losses suffered as a result of the Defendants' actions.

On December 9, 2005, NYLIAC filed a motion for summary judgment in the Plaintiff's state court action on the grounds that her claims were perempted and/or prescribed under Louisiana law.  On February 3, 2006, Ebrahimi filed a motion for summary judgment, asserting similar defenses.  On February 15, 2006, the state trial court granted summary judgment for the defendants.  A final judgment was entered on March 14, 2006, and the Plaintiff has appealed the judgment dismissing her state court claims.

**II.     PRESENT MOTIONS**

In its Motion to Abstain or, Alternatively, to Stay, NYLIAC requests that the Court decline federal jurisdiction in this matter on abstention grounds.  NYLIAC asserts that the original complaint filed by the Plaintiff in this Court is parallel to Plaintiff's previously filed state court proceeding, involving virtually identical parties and allegations, and that abstention is warranted under the *Colorado River* doctrine.  Alternatively, NYLIAC requests that this Court stay proceedings in this case until there is a final determination in the Plaintiff's state court action.  The Plaintiff opposes this motion, arguing that the state and federal cases and the circumstances involved in each do not merit abstention under the *Colorado River* doctrine.

**III.    LAW AND ANALYSIS**

     **A.     *Colorado River* Abstention Factors**

This Court may abstain from the exercise of jurisdiction to promote wise judicial administration, conservation of judicial resources, and comprehensive disposition of actions when concurrent proceedings exist.  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  However, abstention "is an extraordinary and narrow exception to the

duty of a District Court to adjudicate a controversy properly placed before it." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959). As such, the use of the doctrine is the exception as opposed to the rule. *Colorado River*, 424 U.S. at 813.

Abstention under the *Colorado River* doctrine requires an initial showing that the state and federal court proceedings are "parallel." *Hartford Accident & Indem. Co. v. Costa Lines Cargo Servs., Inc.*, 903 F.2d 352, 360 (5th Cir. 1990). Actions are parallel when they involve the same parties and the same issues. *See Republicbank Dallas, Nat'l Ass'n v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987). However, there "need not be applied in every instance a mincing insistence on precise identity" of the parties and issues. *Id.*

Here, the state and federal actions are parallel. The Plaintiff initially filed a similar state court action against Ebrahimi and NYLIAC. In this Court, the Plaintiff subsequently brought an action against the same Defendants. In addition, the state and federal proceedings arise out of substantially similar facts, namely Ebrahimi's alleged misrepresentations as to the payment periods for the various life insurance policies.

The *Colorado River* doctrine next requires an examination of a variety of factors in order to determine if exceptional circumstances exist that justify a decline of jurisdiction. These factors include: (1) whether either court has assumed jurisdiction over a *res*; (2) the relative inconvenience of the forums; (3) whether piecemeal litigation can be avoided; (4) the order in which the state and federal courts obtained jurisdiction; (5) whether and to what extent federal law provides the rules of decision on the merits; and (6) whether the rights of the party invoking federal jurisdiction can be protected in state proceedings. *Colorado River,* 424 U.S. at 817-19; *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 738 (5th Cir. 1999). "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to

exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colorado River*, 424 U.S. at 818-19.  In assessing whether abstention is warranted, the federal court must keep in mind that "the balance [should be] heavily weighted in favor of the exercise of jurisdiction."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).  With this directive in mind, the Court will now analyze the *Colorado River* factors.

### i. Assumption by Either Court of Jurisdiction Over a *Res*

Neither this Court nor the state court has exercised jurisdiction over any *res* or property.  However, the absence of this factor is not neutral.  Rather, the absence of this factor weighs against abstention.  *Murphy*, 168 F.3d at 738.

### ii. Relative Inconvenience of the Forums

Both the state and the federal proceedings are in close proximity to one another in southeastern Louisiana.  Thus, the state forum is not more or less convenient than the federal forum.  The absence of this factor weighs against abstention.  *Id*.

### iii. Avoidance of Piecemeal Litigation

Piecemeal litigation can exist when there is more than one plaintiff, one defendant, and one issue.  *See Murphy*, 168 F.3d at 738.  This case involves one plaintiff, two defendants, and multiple causes of action.  To the extent that the federal and state cases under consideration are merely duplicative, however, this should not be a factor considered in an abstention determination.  *See Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650 (5th Cir. 2000).  Moreover, in the *Colorado River* case, the Court sought to avoid inconsistent rulings with respect to a piece of property.  *See id.*  As noted, no property is involved in this case.

Nevertheless, when there is not complete identity of the parties and issues, the avoidance of piecemeal litigation and resultant inconsistent rulings are appropriate factors to be examined.

*See Stewart v. W. Heritage Ins. Co.*, 438 F.3d 488, 492 (5th Cir. 2006). Here, the Plaintiff's federal action is not merely duplicative of her state court action as there are additional claims and potentially an additional defendant. Although a plea of *res judicata* after the completion of the state court suit could reduce the possibility of inconsistent judgments, as the litigation currently exists the third factor favors abstention. *Id.*

### iv.     Order in Which Jurisdiction Was Obtained

When examining the order in which jurisdiction was obtained, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21. Here, the state court action has progressed to a much greater extent than its federal court counterpart. The state court action was filed by the Plaintiff on September 26, 2003, over three years ago. Significant discovery has occurred in that action, and on February 15, 2006, the state court granted the Defendants' motions for summary judgment dismissing the Plaintiff's claims. The Plaintiff's appeal is pending in state court.

On November 23, 2005, the Plaintiff filed the instant case in federal court. In contrast to the progression in state court, the instant case has not progressed past the filing of the complaint. "The apparent absence of any proceedings in the District Court, other than the filing of the complaint," favors abstention. *Colorado River*, 424 U.S. at 820. Moreover, the fact that the parallel state court action is on appeal strengthens the need for abstention. *See Bd. of Educ. of Valley View Cmty. Unit Sch. Dist. No. 365U v. Bosworth*, 713 F.2d 1316, 1321-22 (7th Cir. 1983); *Melo v. Gardere Wynne Sewell LLP*, No. 3-04-CV-2238, 2005 WL 991600 (N.D. Tex. Apr. 21, 2005) (staying nascent federal action where parallel state action dismissed on statute of limitations grounds was on appeal).

      v.    **Whether and to What Extent Federal Law Provides the Rules of Decision on the Merits**

The presence of a federal law issue must always be a major consideration weighing against surrender of jurisdiction, whereas the presence of state law issues weighs in favor of surrender only in rare circumstances. *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1193 (5th Cir. 1988). Here, the Plaintiff relies on her RICO claim in asserting federal jurisdiction. Although her complaint contains state law causes of action, the presence of a federal question weighs against abstention. *Murphy*, 168 F.3d at 739.

However, "the source-of-law factor has less significance . . . [where] the federal courts' jurisdiction to enforce [the statutory rights in question] is concurrent with that of the state courts." *Romine v. Compuserve Corp.*, 160 F.3d 337, 342 (6th Cir. 1998) (quoting *Moses H. Cone*, 460 U.S. at 25). Here, state courts have concurrent jurisdiction to consider civil RICO claims. *See Tafflin v. Levitt*, 493 U.S. 455 (1990); *Devoe Napco Protective Coatings v. Surface Preparation & Coating Enters. Inc.*, 558 So. 2d 1217 (La. Ct. App. 1990). Therefore, while the presence of RICO claims is an important factor, "its significance is seriously diminished in light of the circumstances." *Romine*, 160 F.3d at 342.

      vi.    **Adequate Protection in State Court**

This factor "can only be a neutral factor or one that weighs against, not for, abstention." *Evanston*, 844 F.2d at 1193. The Plaintiff argues that her federally protected rights against mail and wire fraud are not protected under state law. This is not the case. As noted, Louisiana state courts have concurrent jurisdiction to consider civil RICO claims. Indeed, the Defendants argue that the Plaintiff has been litigating claims virtually identical to her RICO claims in state court for three years. The fact that the state courts have concurrent jurisdiction in civil RICO cases

"further bolsters the adequacy of the state-court action to protect [the Plaintiff's] federal rights." *P&P Mktg., Inc. v. Ditton*, 746 F. Supp. 1354, 1373 (N.D. Ill. 1990). Furthermore, the non-RICO causes of action asserted in the Plaintiff's suit are based on Louisiana law, which belies the argument that they would not have adequate protection in Louisiana state court. Given that the Plaintiff has adequate protection in state court, this factor is neutral in regards to abstention.

### B. Summary of *Colorado River* Analysis

The *Colorado River* abstention factors do not all point in the same direction. Two factors favor abstention, three factors weigh against abstention, and one factor is neutral. However, a careful consideration of all of these factors leads the Court to the conclusion that abstention is warranted.

The two factors that favor abstention in this case, avoiding piecemeal litigation and the order of obtaining jurisdiction, overwhelmingly outweigh the remaining factors. As noted, the state court obtained jurisdiction almost three years before this Court, and the parallel state court case has progressed through discovery, whereas this case has not progressed beyond the filing of the complaint. Moreover, the Plaintiff's state court case is on appeal, further strengthening the need for abstention. In addition, if this case were to proceed, the parties and the courts would be faced with piecemeal litigation and the potential for inconsistent judgments.

Of the remaining factors, only one carries much weight, and that is the fact that federal law will govern the Plaintiff's RICO claims. However, the state courts have concurrent jurisdiction in civil RICO cases, and thus the source-of-law factor only slightly weights against abstention in this case.

### IV. CONCLUSION

Where there are parallel federal and state actions in personum, as here, "each court may

proceed to adjudicate the controversy independently despite the pendency of a similar suit in the other court." *PPG Indus., Inc. v. Cont'l Oil Co.*, 478 F.2d 674, 677 (5th Cir. 1973).  However, in the interest of federal-state comity, a federal court may nevertheless stay a parallel proceeding to avoid interference and duplication of effort.  *See id.*; *Thompson v. Boyle*, 417 F.2d 1041 (5th Cir. 1969).  Given the progression of the proceedings in state court and the potential for piecemeal litigation and inconsistent judgments, IT IS ORDERED that NYLIAC's Motion to Abstain or, Alternatively, to Stay, is GRANTED, and that this case is STAYED until final resolution of the state court proceedings.

New Orleans, Louisiana, this   23rd   day of   August  , 2006.

_____
UNITED STATES DISTRICT JUDGE